UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 2:16-cr-00052-GMN-CWH |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| DOMINIQUE GRACE, | ) | |
| Defendant. | ) | |

Before the court is Defendant Dominique Grace's Sealed Motion for Hearing to Determine Competency (ECF No. 148), filed April 27, 2017. The unopposed motion for a psychiatric examination under 18 U.S.C. §§ 4241, 4242, 4247, and Rule 12.2(c) of the Federal Rules of Criminal Procedure was granted on May 23, 2017. (Order (ECF No. 156).) The court received the psychiatric report on August 4, 2017, and conducted a competency hearing on November 28, 2017. (Mins. of Proceedings (ECF No. 223).) The court has considered the moving papers, reports, and testimony at the hearing, and finds that Grace is competent to stand trial and able to assist his counsel.

## I. BACKGROUND

Grace is charged in an Indictment returned February 23, 2016 with conspiracy to distribute a controlled substance in violation of 18 U.S.C. § 846(a)(1), 841(a)(1) and 841(b)(1)(A)(iii). (Indictment (ECF No. 1).) Grace made an initial appearance, received appointed counsel, and was arraigned on April 1, 2016. Several continuances of the trial date were granted, and trial is currently set for January 22, 2018.

In his motion for a hearing on the question of competency, Grace's defense counsel explained that as he attempted to prepare the case for trial, Grace demonstrated low cognitive abilities and an inability to understand documents which that presented to him. Defense counsel

hired Dr. Thomas Kinsora, a Las Vegas based neuro-psychologist to assess Grace's level of functioning. Dr. Kinsora opines that Grace is not competent to assist counsel.

In response, the government obtained a report from Dr. Jaime Juaregui, a forensic psychologist at the Metropolitan Correctional Center ("MCC"), Federal Bureau of Prisons, San Diego, which opined that Grace was competent to assist his counsel, and to understand the nature of the proceedings against him. Given the difference of opinion between the evaluating doctors and for reasonable cause shown, a competency hearing was conducted on November 28, 2017 to determine Grace's competency to stand trial.

## II. DISCUSSION

### A. Legal Standards

The due process clause of the Fifth Amendment prohibits trying a defendant who is mentally incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Pate v. Robinson*, 383 U.S. 375, 378 (1966). "A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

The treatment of offenders suffering from a mental disease or defect is governed by the Insanity Defense Reform Act of 1984. 18 U.S.C. §§ 4241-48. The Federal Criminal Code establishes a multipart statutory scheme for addressing offenders suffering from a mental disease or defect who have pending federal charges. If a question is raised concerning whether a defendant is competent to stand trial or assist in his defense, the court first determines whether the defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. 18 U.S.C.§ 4241(a), and (d). *See also United States v. Friedman*, 366 F.3d 975, 980 (9th Cir. 2004). Section 4241(a) provides that whenever the court has reasonable cause to believe a defendant is suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall conduct a hearing to determine the defendant's competency. Section 4241(d)

establishes a two-part test of competency. *Id.* A defendant must be able both to understand the nature of the proceedings against him, and to assist properly in his defense. *Id*.

In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court held that the test for determining whether a defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *See also Cooper v. Oklahoma*, 517 U.S. 348, 356 (1996) (quoting *Dusky* and stating the test for incompetence is well settled). Although the statute providing for competency hearings does not allocate the burden of proof, in the Ninth Circuit, the government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991). The Ninth Circuit reviews a district court's determination of a defendant's competency to stand trial for clear error. *United States v. Gastelum-Almeida*, 298 F. 3d 1167, 1171 (9th Cir. 2002).

**B.     Common Findings**

At the competency hearing, the parties stipulated, and the court agrees, that both doctors were properly certified to conduct the psychological evaluations. *See* Def. Ex. A (Dr. Kinsora curricula vitae) and Gov't Ex. 1 (Dr. Juaregui curricula vitae). Both doctors testified, and their evaluations were admitted into evidence. *See* Def. Ex. B and Gov't Ex. 2. Additionally, Patricia Ann Grace, Grace's mother, testified about her son, and Damen Barnes, Grace's brother, also testified. The following summarizes their reports and testimony.

Grace is 39 years old and an average height and weight African American. He was found to be friendly, polite, and mostly cooperative, socially appropriate, and able to establish and maintain good rapport. He had normal affect, did not display any odd or bizarre behavior, remained fully oriented, and his speech was normal. He was talkative and personable.

Grace was raised by his mother, has five step siblings, and has lived with and depended upon his mother most of his life. Grace's medical history indicates he was delivered prematurely, and consequently suffered development delays in walking, talking, and social interaction. He was never able to read fluently, and suffered from learning problems. He probably suffered from at

least one concussion, and was hit in the eye with a rock at age 12-13.

Grace's educational history shows that he finished the 11th grade but quit in the 12th grade. He took special education classes, and his grades were generally poor. His 8th grade standardized testing showed that he fell below the 5th percentile in nearly all of his academic skill areas.

Prior to his detention for the current charge, he was living in a one bedroom apartment with his son (3 years old at the time). Grace is able to recall historical information about his child. The mother of his child died of bone cancer when the child was very young. He still mourns her death. Grace supported himself and his son financially through social security disability payments. His mother is his payee and he received $800 per month. She provided Grace with cash to pay his rent and monthly bills. He understands some aspects of handling money. Grace paid his landlord on the first of the month, and then went to a local grocery store to pay his various bills. He typically used cash and is unfamiliar with how to write checks, but was able to do so with some guidance. He can address an envelope, use the phone, and handles his physical care. In the community, he adhered to a schedule which involved waking up his son, eating breakfast, helping his son dress, and caring for his hygiene. They often went to a park, to a movie, or to the mall. Grace walked his son the short distance to his mother's home almost daily. He knows his phone number, phone numbers of friends and family, and his address. He knows how to contact the landlord if there are problems, and can verbalize how to handle household problems. He knows how to call the police and get medical help .

Grace has never been employed, and was placed on disability in high school. He never has had a drivers license, and has never taken out a loan. He has no hobbies. He was previously convicted of possession of crack cocaine, and served several months in prison. He enjoys cannabis, and used it throughout the day and would lace the joint with cocaine when he could afford it.

Grace's IQ of 61-67 placed his present intellectual functioning in the extremely low to borderline range of cognitive ability. His verbal comprehension abilities were in the 3rd percentile, borderline range, and perceptual reasoning abilities in the 2nd percentile, extremely low to borderline range. He appeared to have a slightly greater capacity to understand verbal as opposed to non-verbal stimuli. Grace's education achievement score indicated that he was in the lower

extreme range of 1st percentile in sentence comprehension, spelling, math computation, reading composite, and in the 2nd percentile in word reading, suggesting that he would have difficulty with comprehending written material, performing math equations, spelling words correctly, and reading fluently. Tests showed that Grace showed no indication of an attempt to feign a memory impairment.

### C. Grace understands the nature and consequences of the proceedings

Dr. Juaregui and Dr. Kinsora agreed that Grace is cognitively impaired and suffers from lifelong mild intellectual disability,[1] a mental disease or defect. Because of his disability, both doctors agreed that Grace would have difficulty with comprehending written material, performing mathematical equations, spelling words correctly, and reading fluently. Dr. Juaregui's report thoroughly explains that Grace understands basic legal concepts, such as the duties of court personnel, witnesses, plea bargaining, and sentencing. He also understands the concept of attorney-client privilege and has a good relationship with his attorney. Dr. Kinsora's report indicates that he believes Grace is unable to understand court proceedings, but on cross-examination, he changed his opinion and indicated that Grace was able to understand the nature and consequences of the proceedings. The evaluators disagree on whether Grace has the mental capacity to assist his counsel in his defense.

### D. Whether Grace is able to assist his counsel

*1. Dr. Kinsora's opinion*

On December 2, 2016, Dr. Kinsora evaluated Grace over a period of six hours at the federal detention facility, and collected information regarding his social, educational, vocational, criminal and medical histories, and additionally conducted numerous neuro-psychological tests, the results of which are provided in his report.

Dr. Kinsora's tests establish, and he testified persuasively, that Grace is intellectually disabled, that he demonstrates significant impairments in concentration, processing speed, abstract

---

[1] Dr. Kinsora testified that his diagnosis of mild intellectual impairment and Dr. Juaregui's diagnosis of mild cognitive impairment are consistent and essentially the same.

reasoning and vocabulary, spatial processing, memory and new learning, and executive function, which he defined as using reasoning to solve problems.  Grace is functionally illiterate, and suffers from limitations in all academic areas, so he cannot be expected to read material given to him.  For verbal communications, he requires continual re-explaining before mastery can be expected, and instructions need to be repeated.  He is mixed up easily, and at times forgets what he was asked to do.  His own explanation of the events in his life are disorganized, and do not make sense.  Dr. Kinsora testified that Grace would not be able to read and understand a plea agreement, and that he will sometimes affirm understanding when he really does not understand.  He does not play up on his deficiencies and seems to have poor insight into how impaired he really is.

Dr. Kinsora testified that the difficulty for Grace is to learn material, but that once he learns information, he retains it.  He testified that repetition yields results, and that Grace would be able to understand a conspiracy allegation if it were explained to him.  Dr. Kinsora believes that Grace seems baffled as to why he is currently incarcerated, and his attempt to explain the reasons for his arrest confused both Dr. Kinsora and his assistant.

Dr. Kinsora believes that Grace has great difficulty understanding his world.  He will have significant problems understanding court proceedings and any complex verbal instruction, despite his familiarity with the judicial system.  Dr. Kinsora did not believe that Grace could live independently, and does not believe that Grace's competency could be restored through medication or programs.  He testified that Grace does "okay" in a highly structured environment.

In his report, he indicates that Grace does not fully understand the court proceedings, or the role of the prosecutor, and only a very rudimentary understanding of the role of his own attorney or the judge.  Accordingly, Dr. Kinsora's report indicates that based upon his overall presentation, including performance on neuro-psychological measures, and his educational records, his diagnosis is that Grace is intellectually disabled, mild, and it is reasonable to conclude that Grace does not understand the court proceedings as required,[2] and currently is not able to assist counsel in his own

---

[2] On cross-examination, Dr. Kinsora agreed that Grace would be able to understand the nature and consequences of the court proceedings.

defense.

### 2. Dr. Jauregui's opinion

Dr. Juaregui's report indicates that she conducted an evaluation of Mr. Grace at MCC over an 18 hour period over seven different days from July 5, 2017 until August 4, 2017. The evaluation included clinical interviews, observation of his behavior at the facility, a review of legal documents, and administration of various psychological tests. Supplemental information was gathered through a review of medical records, review of the evaluation by Dr. Kinsora, review of recorded phone calls made by defendant while at the MCC, and consultation with MCC staff.

Dr. Juaregui's report indicates that Grace was able to recall specific dates, circumstances, and details of various events from his distant and recent life. However, initially, when attempts were made to speak about his current alleged offense, he often made the same comment repeatedly that he did not know, did not understand, or did not remember. He initially appeared very guarded and unwilling to discuss any details associated with his case. This changed toward the end of the evaluation, as he was willing to be more open with Dr. Juaregui, but he continued to appear quite nervous. This was in contrast to their discussions of other topics, at which times he appeared relaxed, volunteered information, and elaborated spontaneously.

Since his arrival the MCC, Grace has been housed in the general population housing unit. While in the institution, he followed directions and never appeared to be in any acute distress. He stated he spent time watching TV, socializing, and reading. During the first meeting, Grace asked to borrow two books from the bookshelf outside of her office. He was offered two books but returned them the following day stating that he "couldn't get into them." He stated that he enjoyed books by Steven King and James Patterson, which are not available at the MCC. He claimed that he enjoyed reading, but sometimes had to cover his left eye when the words became blurry. Dr. Juaregui observed Grace on several occasions in the waiting area of her office. He often was socializing and speaking to other inmates. On one occasion, he stopped her as she was walking and joked that she "forgot about him" because it had been several days since their last meeting. He remembered the exact dates and times that they had agreed to meet and asked why she had not met with him on that specific date. On another occasion, he missed his opportunity to go to shop in the

inmate store because they were meeting during that time. When he learned that he missed his opportunity to shop, he was visibly upset. Dr. Juaregui laid out a plan for Grace and told him she would see about him attending commissary the following day. Unfortunately, this could not occur, and when Grace was so informed, he asked detailed questions about the commissary, why he was unable to attend on a different day, and who he could speak to further about the issue.

Dr. Juaregui diagnosed Grace with Intellectual Disability, Mild.[3] Intellectual disability is characterized by deficits in cognitive ability (i.e. reasoning, problem solving, abstract thinking, judgment, academic learning, and learning from experience) which results in an impairment in adaptive functioning. Adaptive functioning includes life skills such as communication, social participation, occupational functioning, and personal independence. Dr. Juaregui opines that although Grace's IQ is 67, which falls into the extremely low to borderline range, this is potentially an under representation of his ability. The levels of severity of an intellectual disability (i.e. mild, moderate, severe, profound) are based on the individuals adaptive functioning, not their IQ score. Having an intellectual disability does not preclude a person from understanding concepts or exhibiting an ability to learn new information or perform tasks. Rather, it means that they may simply require more support throughout their life. Individuals with mild severity of intellectual disability such as Grace are often able to function age-appropriately in personal care, but sometimes need assistance in daily living tasks. Grace appears able to handle most of his day-to-day tasks quite well without assistance. He lives independently, cares for his son, goes grocery shopping, prepares food, and pays his bills and rent. In addition, he communicates well with others, is socially appropriate, and appears to have positive relationships with friends and family. However, he appears gullible, easily suggestible, and likely at risk of being manipulated by others.

Individuals with mild intellectual disability generally need support with informed health care decisions, legal decisions, and support is also often needed to raise a family. Conceptually, Grace has difficulty with academic skills including writing, reading, comprehension of written

---

[3] Grace self reported marijuana and cocaine addiction for over 20 years, and so he was also diagnosed with Stimulant Use Disorder (Cocaine) and Cannabis Use Disorder.

material and arithmetic. However, he demonstrated a good short term memory and an ability to retain information well when repeated to him or explained in a simply way. He often reiterated exactly what Dr. Juaregui had expressed to him during their meetings, days later during telephone calls. He exhibited a good ability to recall distant and recent aspects of his life. In general she found his adaptive functioning in areas such as communication, social participation, and personal independence are quite good.

Dr. Juaregui notes that it appears that Grace has internalized the notion that he is mentally challenged and therefore can not or should not be expected to learn, understand, or remember. Grace's behavior and self-concept appears to be heavily influenced by his mother and her repeated statements reminding him that he is slow and does not have the capacity to learn and understand things, as was reflected in several recorded telephone calls with his mother while at the MCC. Consequently, at least initially, Grace had a tendency to reiterate that he "doesn't know," "can't recall," or "can't comprehend" but this appeared selective only to questions posed relating to his legal case.

Dr. Juaregui opined that Grace's prognosis is good, that he may benefit from independent living skills training, and counseling regarding substance abuse, self-esteem, and relationships. He acknowledges feelings of guilt regarding his prolonged substance abuse, criminal activity, and the impact it has on both himself and others.

After extensive discussions with Grace, Dr. Juaregui reported that Grace was able to define the terms "conspiracy" and how it applied to his case. He said that he is accused of making an agreement with a group of people to sell drugs. His main "confusion" appears to be with the reason why is charged with conspiracy. Grace contends both he and his attorney have discussed a lack of solid evidence connecting him to the conspiracy. Grace believes that his charge should only include the possession of cocaine, and since he already served time for that charge, he is therefore "confused" and does not understand. Dr. Juaregui believes that Grace very well understands the details associated with his case, knowing there are eight people charged on his indictment. He refers to them as his co-de's (slang for co-defendant) and he indicated that he has frequent contact with them while at the detention center in Las Vegas. He claimed they help him with his case. In

addition, in a recorded phone call, Grace told a friend about the status of two of his co-defendants and the length of sentences that they received.

Dr. Juaregui believes that Grace understands basic legal concepts, the duties of the prosecutor and defense counsel, and witnesses, the concept of a plea bargain, probation, minimum and maximum sentences, pleas of guilty and not guilty, and the legal consequences of each. He understands the plea of not guilty by reason of insanity, and at least initially, he believed that the best way he could be defended against the current charge is "I guess insanity, because I don't understand. My mom says I've been like that my whole life . . . that I'm out supposedly committing crimes and I don't understand what I'm doing."

Grace knows his attorney's name, is able to recall previous interactions he had with his attorney and has confidence in his attorney's ability to defend him. He understood the concept of attorney/client privilege, and he appreciates that his attorney has taken the time to explain things to him, and he is willing to continue to follow the advice of his counsel.

In summary, Dr. Juaregui opined that Grace has a mild intellectual disability, however, this disability does not substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or substantially impair his ability to properly assist counsel in a defense.

### E.     Mr. Barnes' and Mrs. Grace's Testimony

Mr. Damen Barnes, Grace's older brother, testified and confirmed Grace's intellectual disabilities and the circumstances of his upbringing. He said Grace did not read books. He recalled that Grace lived in an apartment with his son for a short time, but was evicted because he did not want to pay his rent. He testified that Grace held a job with a temporary service doing manual labor for about three months, but then quit. He believes his brother is gullible and easily manipulated.

Patricia Grace, Defendant's mother, testified on his behalf at the hearing. She outlined the circumstances of his birth, and the resulting intellectual challenges. Grace has always lived with his mother, except when he was in prison and for a short three month period when he lived with his son in a nearby apartment. She indicated that she helped Grace every day when he lived in the

apartment with his son. Mrs. Grace currently has custody of the child. She testified that Grace has only briefly held a manual labor job. She indicated that Grace tends to act like he understands what is going on around him, but really he usually does not understand, and has difficulty following directions. Finally, Mrs. Grace indicated that when her son was at the MCC, she told her son that he was there for a competency test, but not that he should not be truthful.

**F.      Analysis**

While a finding of incompetency is predicated on the existence of a mental disease or defect, the standard for evaluating a defendant's competency to stand trial is not a medical inquiry, but rather a legal determination. *United States v. Makris*, 535 F.2d 899, 908 (5th Cir. 1976). Here, the experts have agreed that Grace suffers from mental disability of mild intellectual impairment and mild cognitive impairment. The experts also agree that he is able to understand the nature and consequences of the proceedings against him. The evidence supports these conclusions, and the court agrees.

The first prong of the *Dusky* standard, whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," concerns a defendant's ability to effectively participate in his defense by communicating effectively with his counsel. *See Drope*, 420 U.S. at 171-72. The court is faced with competing opinions by the experts in this case on the question of whether Grace can assist counsel in his defense with a reasonable degree of rational understanding. The Supreme Court has noted that the concept of "rational understanding is difficult to define." *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007). The understanding should be rational as well as factual – recollection of events is not sufficient. Rather, the defendant should be able to confer with his counsel, to testify coherently, and to make a reasoned choice about alternatives such as whether he should testify.

The court gave minimal weight to Mrs. Grace's testimony because she was clearly, and perhaps understandably, biased in favor of her son and a finding that Grace was not responsible for his actions because of his disability. Dr. Juaregui's report of Mrs. Grace's conversations with Grace, who often told him, "you don't know what's going on," and urging him to tell Dr. Juaregui that he was "not fit for trial" undermine the usefulness of her testimony in arriving at a decision

regarding Grace's competency.   Mr. Barnes testimony confirmed that Grace suffers from learning disabilities, and is easily manipulated.

The court has considered the familiarity and exposure of each evaluating expert witness with Grace, the thoroughness of the evaluation performed, and the care with which the respective experts reached their conclusions.  It is clear that Dr. Juaregui had a much greater ability to observe Grace in a variety of settings.  She spent 18 hours over six days in testing, interviews, observing him interacting with others, and monitoring his telephone calls with friends and family.  Dr. Kinsora only took six to seven hours, and much of the evaluation time was spent administering various tests to determine Grace's mental disability.  Dr. Kinsora noted that Grace got mixed up easily, and test-taking instructions frequently had to be repeated.  Dr. Kinsora's opinion is that because Grace is intellectually disabled, and his explanation of event of his life are disorganized, and often do not make sense, he will be unable to assist his counsel.  Dr. Kinsora's discussion with Grace regarding the charged offense simply concludes that Grace is "baffled as to why he is currently incarcerated, and his attempt to explain the reasons for his arrest confused both this examiner and his assistant." It does not appear that Dr. Kinsora and Grace ever got to the point of discussing the charges, likely because Grace responded to Dr. Kinsora as he initially did with Dr. Juaregui, saying that he didn't know or understand.  Although he concludes that Grace cannot assist counsel, he also recommends that assistance and additional time be provided to explain information to Grace, which appears to indicate that with that support, Grace could effectively consult with counsel.

Dr. Juaregui was direct, cogent, and produced a more thorough report, likely the result of having much greater interaction with Grace.  Her report generally agrees with Dr. Kinsora regarding Grace's mental disability, but goes further by providing information which demonstrates Grace's understanding of the legal process, the concept of conspiracy,  relationships with co-defendants, short and long term memory, and the influence that Grace's mother has on Grace's own perception of his competency.  The stark difference in the two opinions is that Dr. Juaregui was able to develop more insight into the impact of Grace's disability, and she believes that Grace is able to understand the nature of a conspiracy charge and his relationship with his co-defendants,

which would undoubtedly give him the ability to interact with counsel on those topics.

Grace told Dr. Juaregui that he was confused about the conspiracy charge because of a perceived lack of evidence. The court notes that Grace's counsel, along with other defendants, filed a motion for a bill of particulars in this case (ECF No. 119), arguing that the evidence of conspiracy is lacking, and that the indictment is so generalized and generic that defendants are unable to prepare a defense for trial. The court denied the request for a bill of particulars for reasons set forth in its order. (Order (ECF No. 128)). It may be, however, that the reason for Grace being confused about the case against him, or being unable to understand, is because the evidence is neither strong nor clear. Given Grace's disability, it is likely that he is not a leader in the alleged conspiracy, and his criminal liability may rest mainly upon the actions of co-conspirators who are only tangentially related to him. Although the court has not reviewed the discovery in this case, Grace's concern that there is a lack of evidence against him, a concern shared by his defense counsel as argued in the motion for a bill of particulars, may be an entirely rational assessment of the evidence.

Grace recognizes the wrongfulness of his possession of cocaine, and he understands that he is alleged to have entered into an agreement with other individuals to sell cocaine. He therefore appears to have a rational understanding of the charges. Grace has a good, cooperative relationship with his counsel. Given Grace's ability to recall distant and recent events, retain information, appreciate his counsel's advice, communicate relevant information to counsel, and learn, albeit with some difficulty, about how his case will proceed, it appears Grace is competent to consult with counsel.

The court finds that the Government has met its burden of establishing, by a preponderance of the evidence, that Grace is competent to stand trial. Although he suffers from a mild intellectual disability, it does not substantially impair his competence to stand trial. More specifically, the court finds that Grace has the present ability to consult with his lawyer with a reasonable degree of rational understanding, and that he possesses a rational as well as factual understanding of the proceedings against him.

///

### III.  CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Grace be required to stand trial based on the undersigned's findings that he is competent in that he has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

### IV.  NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: December 29, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**